UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Daniel NOONE, <br><br> Plaintiff, <br><br> v. <br><br> Richard A. CARPENTER, Jason E. SHOSEY, Christopher C. KINZER, Michael J. PARADY, Charlotte C. FERRO, Matthew CHARLESTON, WELLPATH, and Dean GRAY, <br><br> Defendants. | Civil Action No. 21-cv-10959-AK |

MEMORANDUM AND ORDER

**A. KELLEY, D.J.**

Plaintiff Daniel Noone ("Noone"), an inmate at the Souza-Baranowski Correctional Center ("SBCC") in Massachusetts, brings this action under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment right to be free from cruel and unusual punishment and the Fourteenth Amendment's Equal Protection Clause. Noone also brings a claim pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and a state law claim of intentional infliction of emotional distress. Noone names six SBCC correction officers as defendants: Richard Carpenter ("Carpenter"), Jason Shosey ("Shosey"), Christopher Kinzer ("Kinzer"), Michael Parady ("Parady"), Charlotte Ferro ("Ferro"), and Matthew Charleston ("Charleston"). Noone also names Dean Gray ("Gray"), the Superintendent of SBCC, and Wellpath, the healthcare provider at SBCC, as defendants.

Wellpath filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). [Dkt. 24]. Carpenter, Shosey, Kinzer, Parady, Charleston, and Gray (the "DOC Defendants")

1

also filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] [Dkt. 41]. For the reasons that follow, Wellpath's Motion to Dismiss is GRANTED, and the DOC Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I. Factual Allegations

Unless otherwise noted, the facts are presented as alleged in the Complaint. [See Dkt. 1 ("Complaint")]. Noone, an inmate at SBCC, has been diagnosed with "serious mental illness" and was, at relevant times, housed in the "Secure Treatment Program" ("STP") Unit, where inmates with serious mental illnesses receive care. [Id. at 1-2, ¶ 11]. Sometime during the morning on November 7, 2020, Noone informed an unidentified officer in the STP Unit that he was in "a crisis" and needed to speak to a mental health clinician. [Id. at ¶ 12]. This unnamed officer ignored Noone. [Id.]. While Noone waited to speak with a clinician, another inmate who had called for a clinician was taken from his cell to speak with "Medic 5,"[2] the "code used at SBCC for crisis related matters." [Id. at ¶ 14]. Noone then held a phone in front of his cell to attract an officer's attention, and when Parady responded, Noone "made his concerns known" to him. [Id. at ¶ 15]. Parady "was adamant that this is not how things work if he wants some attention," and Noone continued to wait to see Medic 5. [Id.]. In due course, Noone saw the other inmate return from his meeting with Medic 5. [Id. ¶¶ 15-16]. When nobody summoned Noone to see Medic 5 thereafter, Noone "covered his cell window to block the view inside his cell," refused his medication when offered, and again requested to see Medic 5. [Id. at ¶ 17].

---

[1] Charlotte Ferro ("Ferro"), appearing specially through counsel, filed a Motion to Dismiss due to Noone's failure to effectuate service according to Federal Rule of Civil Procedure 4. [Dkt. 39]. The Court has already addressed this Motion. [See Dkt. 43].
[2] Noone uses "Medic 5" and clinician seemingly interchangeably. The Court does so as well, mirroring the language used in the Complaint for particular allegations.

After officers checked on Noone by looking into the cell through the food slot around 11:00 AM, Noone placed a noose around his neck, tied a sheet to the cell's window frame, kneeled on a bench, and leaned forward until he passed out. [Id. at ¶¶ 18-19]. Noone awoke and lost consciousness three times before yelling to a passing officer that he needed help. [Id. at ¶¶ 20, 22]. Noone then passed out again and awoke after he was sprayed with chemical agents. [Id. at ¶¶ 22-23]. At this point, Noone heard Charleston give an order to enter the cell and "smash him." [Id. at ¶ 24]. Noone was thrown against the back wall of his cell when officers entered, after which he was handcuffed and shackled. [Id.]. Noone was then put on a gurney, seen by a nurse, transported to a hospital, and monitored upon his return to SBCC later that day. [Id. at ¶¶ 25-27].

Noone alleges multiple causes of action against the defendants, including violations of the Eighth Amendment's prohibition on cruel and unusual punishment ("Count I"); the "Equal Protection Clause," which the Court interprets as a reference to the Fourteenth Amendment ("Count II"); the Americans with Disabilities Act (the "ADA") ("Count III"); and a state law claim of intentional infliction of emotional distress ("Count IV"). [Id. at ¶¶ 47-64]. The Court previously dismissed Noone's official capacity claims for damages under 42 U.S.C. § 1983. [Dkt. 5 at 2]. The Court has also already dismissed all individual capacity claims under the ADA. [Id.]. The DOC Defendants and Wellpath have moved to dismiss the remainder of the action for failure to state a claim upon which relief can be granted. Noone has opposed only Wellpath's Motion to Dismiss. [See Dkts. 37, 38].

## II. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege sufficient facts to state a claim for relief that is "plausible on its face" and

actionable as a matter of law.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry.  García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013).  First, the Court must perform a close reading of the complaint to distinguish factual allegations from conclusory legal statements.  Id.  Factual allegations must be accepted as true, while legal conclusions are not entitled to credit.  Id.  A court may not disregard properly pleaded factual allegations even if actual proof of those facts is improbable.  Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged."  Haley v. City of Bos., 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted).  Although the Court is "required to construe liberally a pro se complaint," a plaintiff's "pro se status does not insulate [him or her] from complying with procedural and substantive law." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997).  When resolving a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court is generally limited to "the complaint, documents attached to it, and documents expressly incorporated into it."  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71-72 (1st Cir. 2014).

### III.  Discussion

Noone brings his constitutional claims pursuant to 42 U.S.C. § 1983.  He brings his ADA claim separately, in addition to a supplemental state law claim for intentional infliction of emotional distress, which are based on the same allegations underlying the constitutional claims.

#### A.  Section 1983

Section 1983 provides that "[e]very person" acting "under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia" who subjects

or causes to subject someone "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" shall be liable to the injured party. 42 U.S.C. § 1983. An individual asserting a Section 1983 claim must show that the challenged conduct is "attributable to a person acting under color of state law" and that the conduct was a "denial of rights secured by the Constitution or by federal law." Soto v. Flores, 103 F.3d 1056, 1061 (1st Cir. 1997); see Graham v. Connor, 490 U.S. 386, 393-94 (1989) (citation omitted) (explaining that Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred"). The defendants do not dispute that they were acting "under color of state law." Rather, they dispute that the injuries alleged amount to a violation of Noone's Eighth and Fourteenth Amendment rights.

  1. **Eighth Amendment**

Noone alleges that Carpenter, Shosey, Kinzer, Parady, and Charleston's conduct[3] before and after his suicide attempt on November 7, 2020 deprived him of his Eighth Amendment right to be free from cruel and unusual punishment. [Complaint at ¶ 48]. In particular, Noone claims that they were deliberately indifferent to Noone's requests for help prior to his attempted suicide and that they used excessive force causing "wanto[n] and unnecessary infliction of pain" when responding to his suicide attempt. [Id.]. Noone separately alleges that Gray and Wellpath have violated the Eighth Amendment by "failing to remedy the systematic deficiencies in the delivery of medical services" and "failing to properly train officers and staff." [Id. at ¶ 49].

---

[3] Noone includes Ferro in this allegation, but the Court limits its discussion to the other named officers, as the Court has already resolved Ferro's separate Motion to Dismiss. [See Dkts. 39, 43].

5

### a) Carpenter, Shosey, Kinzer, Parady, and Charleston (the "DOC Officers")

Noone's Eighth Amendment claims against the DOC Officers stem from two separate incidents. The first is the allegedly inadequate medical treatment prior to Noone's suicide attempt. Specifically, Noone contends that the DOC Officers ignored his pleas for help, would not allow him to meet with a mental health clinician while he was in "a state of crisis," and allowed and prompted him to attempt suicide. [Id. at ¶ 48]. The second is the use of excessive force when responding to his suicide attempt. Noone claims that spraying him with a chemical agent while he was unconscious and using excessive force upon entering the cell caused him wanton and unnecessary infliction of pain. [Id.].

A party alleging a violation of the Eighth Amendment due to denied or inadequate medical care must "satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need." Kosilek v. Spencer, 774 F.3d 63, 82 (1st Cir. 2014). The risk of harm "must have been obvious to the particular officials who are defendants" to satisfy the second element. Ruiz-Rosa v. Rullan, 485 F.3d 150, 157 (1st Cir. 2007). Noone's allegations satisfy neither facet.

A medical need is "serious" if it has been "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 (1st Cir. 2011). Here, Noone states that he was diagnosed with "serious mental illness" without providing further details. [Complaint at 1]. Records attached to the Complaint show that Noone was diagnosed with major depressive disorder in March 2020. [See, e.g., Dkt. 1-2 at 8]. They also state that Noone was diagnosed with borderline and antisocial personality disorders in October 2018.

[Id.]. The Court does not doubt the challenges and seriousness of living with a mental illness. However, Noone's "serious mental illness" diagnosis and requests to see a clinician regarding a "crisis," as generally alleged in the Complaint, fall short of showing an obvious medical need necessitating a doctor's immediate attention.[4] A "future risk of suicidality" that is a "clear risk of future harm" may "suffice to sustain an Eighth Amendment claim," but Noone does not state that, at the time of the incident, he was at risk of imminent suicide, nor does he allege previous or ongoing suicidal ideation. Kosilek, 774 F.3d at 90. He also does not allege a physician had diagnosed him as at risk for suicide. While hindsight may be 20/20 in light of Noone's later suicide attempt, Noone's vague allegations of a "crisis" do not establish a serious medical need capable of sustaining an Eighth Amendment claim.

Even if Noone had adequately alleged a serious medical need, he has failed to satisfy the second element required to demonstrate inadequate medical care. Only "deliberate indifference" to the serious medical needs of prisoners violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference is "conduct that offends evolving standards of decency in a civilized society," DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir. 1991), and it can include the denial of needed medical treatment to punish an inmate or wanton disregard of a prisoner's needs akin to criminal recklessness, Kosilek, 774 F.3d at 83. A plaintiff must allege that *each* defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that *each* defendant did, in fact, "draw that inference." Ruiz-Rosa, 485 F.3d at 156; see also Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999) ("It is axiomatic that the liability of persons sued in their individual capacities under

---

[4] The Court considers Noone's later suicide attempt a separate "serious medical need," and Noone does not allege that the defendants' medical response to the suicide attempt was inadequate. Rather, he focuses on their alleged indifference prior to the incident.

7

section 1983 must be gauged in terms of their own actions."). The only named defendant with whom Noone spoke prior to his suicide attempt was Parady. Noone states that he "made his concerns known" to Parady, "but he was adamant that this is not how things work if he wants some attention," and Noone continued to wait for Medic 5. [Complaint at ¶ 15]. None of the other DOC Officers knew of Noone's alleged crisis, and the facts alleged do not suggest that Parady was aware of "a strong likelihood" of an imminent suicide attempt. See Penn v. Escorsio, 764 F.3d 102, 110 (1st Cir. 2014) (citation omitted) ("In a suicide case, a finding of deliberate indifference requires a strong likelihood, rather than a mere possibility, that self-infliction of harm will occur. The conduct must encompass acts or omissions so dangerous (in respect to health and safety) that a defendant's knowledge of a large risk can be inferred."). As such, Noone has failed to state a claim for inadequate medical care in violation of the Eighth Amendment as to the DOC Officers.

Whether there is a plausible claim that the DOC Officers used excessive force in violation of the Eighth Amendment when responding to the suicide attempt is a closer question. Only the "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). When examining accusations of excessive force in violation of the Eighth Amendment, the inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Noone alleges he "had been sprayed with chemical agents multiple times" while passed out. [Complaint at ¶¶ 22, 23]. He also claims that Charleston gave the order to enter the cell and "smash him." [Id. at ¶ 24]. Noone further alleges that he was "violently thrown against the back wall," hit his head, and was "thrown on the ground to be handcuffed and shackled." [Id.]. With

8

the exception of Charleston's directive, Noone's Complaint does not describe any specific acts by any of the named DOC Officers, and instead provides general allegations that "the officers" entered his cell. [See id. at ¶¶ 22-24]. He appears to include the other DOC Officers in this action based on incident reports they each filed, which Noone attached to the Complaint. [See Dkt. 1-2 at 19-25]. These reports acknowledge the use of a chemical agent, and none suggest Noone was thrown against the wall upon the DOC Officers' entry into his cell. [See id.]. Although these incident reports describe the DOC Officers' participation in the incident, Noone also vaguely alleges the DOC Officers tried "to cover up crime by committing perjury on reports." [See id.; Complaint at ¶ 14].

While force "applied in a good faith effort to maintain or restore discipline" does not constitute cruel and unusual punishment, the Court cannot say, accepting the allegations in the Complaint as true as it must at this stage, that the use of a chemical agent and physical force upon entry into Noone's cell when he was unconscious was not excessive. Whitley, 475 U.S. at 320-21 (citation omitted); see Washington v. Amand, 308 F. Supp. 3d 497, 504 (D. Mass. 2018) (citing Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008)) ("While the use of chemical agents is not excessive force *per se*, the amount of force used must be proportionate to the need for force."); but see Schultz v. Doher, 335 F. Supp. 3d 177, 187 (D. Mass. 2018) (finding that the plaintiff could not prove deliberate indifference where the defendants used a chemical agent "briefly and sparingly" only after they "implored the plaintiff to exit his cell and unambiguously warned him that they would have to use an agent if he refused"). As such, Noone's Complaint is sufficient to state a claim for relief as to the DOC Officers' alleged use of excessive force. The Court therefore denies the DOC Defendants' Motion to Dismiss as to the DOC Officers in Count I, limiting the claim to the DOC Officers' use of excessive force after Noone's suicide attempt.

### b) Gray

Noone claims that Gray, the Superintendent of SBCC, has violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to "remedy the systematic deficiencies in the delivery of medical services," to "properly train officers and staff," and to correct violations after they occurred. [Complaint at ¶ 49]. The Court reads Noone's allegations as seeking to impose supervisory liability on Gray. Supervisors "may only be held liable under § 1983 on the basis of their own acts or omissions." Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005). Generally, this requires the supervisor to be a "primary violator or direct participant in the rights-violating incident" or to supervise, train, or hire a subordinate with "deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." Wilmont v. Tracey, 938 F. Supp. 2d 116, 141 (D. Mass. 2013) (citing Sanchez v. Pereira-Castilla, 590 F.3d 31, 49 (1st Cir. 2009)). There must be an "affirmative link" between the alleged constitutional violation and the supervisor's conduct "that amounts to condonation or tacit authorization." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (citation omitted).

Noone has not alleged that Gray participated in the provision of any medical care (or lack thereof) prior to his suicide attempt or in the use of force when the DOC Officers entered his cell while responding to his medical emergency. In fact, Noone does not claim that Gray even knew about the DOC Officers' actions at the time. Noone does not allege any act or omission by Gray beyond broad statements that Gray encourages punishment and fails to reprimand his staff. [See Complaint at ¶¶ 45, 49]. This is insufficient to state a plausible claim to relief against Gray in his individual capacity. See Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6 (1st Cir. 2005) (citations omitted) (noting that the Court is "not bound to credit 'bald

assertions, unsupportable conclusions, periphrastic circumlocutions, and the like'"). Noone also does not identify Gray's role in establishing any particular policies or supervising any training—let alone the underlying policies and trainings themselves—and "[g]eneralized allegations of a failure to train and supervise are insufficient to state a claim." See Wilmont, 938 F. Supp. 2d at 142 (finding that the plaintiff failed to state a claim for supervisory liability based on the defendants' "roles in establishing policy or engaging in supervision and training" where the plaintiff "failed to put forth facts identifying the policy at issue or what training was allegedly omitted"). Therefore, the Court grants the DOC Defendants' Motion to Dismiss as to Gray in Count I.

### c) Wellpath

Noone alleges Wellpath violated his Eighth Amendment right to be free from cruel and usual punishment by showing deliberate indifference to his serious medical needs and by failing to properly train officers and staff. [Complaint at ¶ 49]. Noone, however, does not implicate Wellpath in any of the alleged acts or omissions prior to his suicide attempt or the DOC Officers' response when they entered his cell after discovering him. In fact, Noone does not even state that Wellpath or its employees knew he was in "a crisis" prior to his suicide attempt. Although Noone states that Wellpath "denied him Medic 5 along with officers and refused to meet with the Plaintiff," he fails to provide any facts supporting this statement. [See id. at ¶ 46]. Rather, Noone's allegations of deliberate indifference to his serious medical needs stem from the acts of the DOC Officers, not Wellpath or its employees. Noone also does not point to any specific deficiencies in the delivery of medical care services generally—and certainly not any *systematic* deficiencies—prior to his suicide attempt, nor does he explain how Wellpath staff are improperly

11

trained. As such, Noone has failed to state a claim against Wellpath for deliberate indifference to his serious medical needs.

Any attempt to impose supervisory liability on Wellpath also fails. As already explained, supervisors are not liable for the conduct of those under their command unless there is direct participation in the challenged conduct or an affirmative link between the alleged constitutional violation and the supervisor's conduct amounting to "condonation or tacit authorization." Velez-Rivera, 437 F.3d at 156. Noone has not alleged any facts indicating Wellpath was a primary violator or direct participant in the underlying incident, nor has he named any Wellpath subordinates who contributed to Noone's alleged civil rights deprivation or any particular failures of Wellpath to supervise or train such employees. Cursory allegations of "failing to properly train officers and staff" are insufficient to state a plausible claim to relief. See Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595-96 (1st Cir. 2011) (citing Bell Atl. Corp., 550 U.S. at 557 n.5) (explaining that "some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual'" and that "pure speculation" and "mere possibility [are] not enough to state a claim"); see also Wilmont, 938 F. Supp. 2d at 142.

To the extent that Noone argues Wellpath's policies and customs caused his injuries, such a claim also fails. Wellpath cannot be liable under Section 1983 "unless its official policy or custom was the 'moving force' behind the alleged violation of constitutional rights." Hayden v. Grayson, 134 F.3d 449, 456 (1st Cir. 1998) (citing Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694 (1978)).[5] Where a complaint fails to identify "the custom or practice at issue," it has failed

---

[5] While the First Circuit has not explicitly held that a private entity such as Wellpath should be treated as a municipality for the purposes of Section 1983, other district courts in this Circuit have imposed the requirements of a Monell claim on such entities. See, e.g., Nesbitt v. Wellpath, No. 20-cv-12126-FDS, 2022 WL 617514, at *5 (D. Mass. Mar. 2, 2022).

to state a claim that the policies or customs caused the alleged constitutional deprivation. See Nesbitt v. Wellpath, No. 20-cv-12126-FDS, 2022 WL 617514, at *6 (D. Mass. Mar. 2, 2022) (citation omitted). Noone names no Wellpath policies or customs that contributed to a deliberate indifference to his medical needs or a failure to train employees. He therefore fails to state a plausible claim that Wellpath's policies or customs caused his alleged injury. Moreover, where there is no underlying constitutional tort by the employees of the private entity or municipality, there can be no liability predicated on policy or custom. See Leavitt, 645 F.3d at 504. As explained, Noone alleges only that the DOC Officers' actions caused his Eighth Amendment deprivation—not Wellpath employees.

For all of these reasons, the Court grants Wellpath's Motion to Dismiss as to Count I.

### 2. Fourteenth Amendment

Although Noone alleges a violation of the "Equal Protection Clause," which the Court presumes is a reference to the Fourteenth Amendment, he does not list any particular defendant as the actor. [See Complaint at ¶¶ 54-55]. This alone is enough to dismiss Count II as to all the defendants. See Peñalbert-Rosa, 631 F.3d at 594-95 ("[A]n adequate complaint must include not only a plausible claim but also a plausible defendant. Yet there is nothing in the complaint beyond raw speculation to suggest that *the named defendants* participated—either as perpetrators or accomplices—in the [alleged injustice]."). Even if Noone did name specific defendants, his Fourteenth Amendment claim falls short.

The Equal Protection Clause "prohibits a state from treating similarly situated persons differently because of their classification in a particular group." Mulero-Carrillo v. Roman-Hernández, 790 F.3d 99, 105-06 (1st Cir. 2015). To survive a motion to dismiss, an equal protection claim must allege facts plausibly demonstrating that, compared with others similarly

13

situated, the plaintiff was "selectively treated" based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Id. at 106 (citations omitted). Noone does not specify a protected class in the Complaint, though he vaguely references his status as a "convicted felon." [See Complaint at ¶ 54]. Noone's response to Wellpath's Motion suggests that he seeks to assert a protected class of inmates with disabilities or serious mental illness. [See Dkt. 38 at 11]. Regardless, Noone has failed to identify any facts demonstrating he was treated differently than inmates not diagnosed with serious mental illness. The only allegations in the Complaint that could relate to disparate treatment are Noone's claims that another inmate spoke with Medic 5 before him. However, Noone does not allege that this inmate was able to see a clinician before him due to some impermissible consideration. In fact, the Complaint suggests that this inmate, a convicted felon housed alongside Noone in the STP Unit for inmates with serious mental illnesses, saw Medic 5 before Noone simply because he requested to speak with a clinician before Noone did. [See Complaint at ¶ 14]. Noone's Complaint is devoid of facts supporting any element of a Fourteenth Amendment claim. Accordingly, the Court grants the DOC Defendants and Wellpath's Motions to Dismiss as to Count II.

### B. Americans with Disabilities Act

Noone brings an ADA claim against all of the defendants.[6] [Complaint at ¶ 57]. Noone specifically alleges that Gray and Wellpath violated the ADA by "concealing the acts and omissions of its staff" and by failing to remedy systematic deficiencies in the delivery of health services. [Id. at ¶¶ 59, 62]. Title II of the ADA prohibits discrimination against persons with

---

[6] See supra note 3.

disabilities by "public entities," and it is this provision that the Court uses to evaluate Count III. See Dkt. 5.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; see Parker v. Universidad de P.R., 225 F.3d 1, 5 (1st Cir. 2000). To state a claim under Title II, a plaintiff must allege "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."[7] Parker, 225 F.3d at 5.

Noone provides only the most cursory allegations in support of Count III. He states that "Plaintiff has a disability as described in th[e] ADA definition." [Complaint at ¶ 56]. The Court presumes he refers to his "serious mental illness" diagnosis. [See id. at ¶ 1]. Even if this vague reference were sufficient to establish that Noone is a qualified individual with a disability, Noone has failed to provide facts demonstrating that he did not receive adequate medical care based on that diagnosis. The delay Noone experienced after he requested to speak with a mental health clinician is not suggestive of exclusion or a denial of benefits, nor does Noone provide any facts suggesting this delay was *by reason of* his mental health diagnosis. The ADA does not provide relief to individuals simply because they believe their care was inadequate. Moreover,

---

[7] Wellpath argues that, as a private contractor, it is not a "public entity" under Title II and, regardless, Noone has failed to allege facts sufficient to state a plausible claim for relief. The First Circuit has yet to decide whether private contractors are public entities subject to Title II, though some courts in this Circuit have determined that they are not. See, e.g., Sosa v. Mass. Dep't of Corr., No. 18-cv-12223-NMG, 2019 WL 3557701, at *3 (D. Mass. 2019). The Court need not address this issue here, as Noone has otherwise failed to state a plausible ADA claim against all of the defendants.

15

Noone's generalized statements that Wellpath and Gray have failed to remedy systematic deficiencies in "staffing, facilities, equipment, and procedures" in the areas of "mental health evaluations," "treatment planning," "medication planning," and "mental health treatment on crisis watch" are also insufficient to state a plausible claim to relief under the ADA. Beyond these conclusory allegations, there are no facts to suggest that Wellpath and Gray excluded or denied benefits to Noone because of his mental health diagnosis, and Noone does not cite any specific examples or instances of discrimination connected to these deficiencies. Noone also fails to identify any acts of discrimination related to any of the defendants other than the alleged deficiencies of Gray and Wellpath described above. See Ocasio-Hernández, 640 F.3d at 12 (explaining that the factual allegations must allow for a "reasonable inference that the defendant is liable for the misconduct alleged"); Peñalbert-Rosa, 631 F.3d at 594-95.

For these reasons, the Court grants the DOC Defendants and Wellpath's Motions to Dismiss as to Count III.

### C. Intentional Infliction of Emotional Distress

Noone alleges Carpenter, Shosey, Parady, Charleston, Wellpath, and Gray[8] intentionally inflicted emotional distress.[9] [Complaint at ¶ 63]. In particular, Noone claims that the use of excessive force, deliberate indifference to medical needs, and the failure to remedy systematic deficiencies in the delivery of medical services caused him emotional distress. [Id.]. To state a Massachusetts law claim for intentional infliction of emotional distress, a plaintiff must show that (1) the actor "intended to inflict emotional distress" or "knew or should have known" that emotional distress would result from the conduct; (2) the conduct was "extreme and outrageous,"

---

[8] See supra note 3.
[9] The Court reads Count IV as a claim for intentional, not negligent, infliction of emotional distress, given Noone's use of "deliberate and intentional" in his description of the claim. [See Complaint at ¶ 63].

16

"beyond all possible bounds of decency," and "utterly intolerable in a civilized community"; (3) the defendant's actions caused the plaintiff's distress; and (4) the plaintiff's emotional distress was "severe" such that no reasonable person could be expected to endure it. Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996) (citing Agis v. Howard Johnson Co., 355 N.E.2d 315, 318-19 (Mass. 1976)).

Noone has not alleged any facts suggesting that the defendants intended to inflict emotional distress when responding to his suicide attempt, nor that their conduct amounts to "extreme and outrageous behavior beyond all bounds of decency" that is "utterly intolerable in a civilized community." Id. (citations and internal quotation marks omitted) ("Recovery on such a claim requires more than that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort."). Moreover, beyond the conclusory statement that the defendants' actions caused Noone "uncertainty, apprehension, fear, anguish, anxiety, and traumatic mental and emotional suffering" [Complaint at ¶ 63], Noone fails to provide sufficient facts suggesting the "requisite level of severity" of emotional distress "that no reasonable [person] could be expected to endure," Boyle v. Barnstable Police Dep't, 818 F. Supp. 2d 284, 310 (D. Mass. 2011). Emotional responses, such as "anger, sadness, anxiety, and distress" are "often not legally compensable" even if "blameworthy." Id. (citations omitted). The generalized allegations in the Complaint simply do not meet the "very high" standard for making a claim of intentional infliction of emotional distress. Id. Therefore, the Court grants the DOC Defendants and Wellpath's Motions to Dismiss as to Count IV.

## IV.     Conclusion

For the foregoing reasons, Wellpath's Motion to Dismiss [Dkt. 24] is GRANTED, and the DOC Defendants' Motion to Dismiss [Dkt. 41] is GRANTED IN PART and DENIED IN PART. All counts are dismissed as to Wellpath and the DOC Defendants, with the exception of Noone's Eighth Amendment claim, brought pursuant to 42 U.S.C. § 1983, against Carpenter, Shosey, Kinzer, Parady, and Charleston for their alleged use of excessive force.

Dated: May 9, 2022                                             /s/ Angel Kelley
                                                                              Hon. Angel Kelley
                                                                              United States District Judge